IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| Reading Rock Northeast, LLC,<br><br>      Plaintiff,<br><br>      v.<br><br>William N. Russell, III and Russell Cast Stone, Inc.,<br><br>      Defendants. | DOCKET NO. 1:20-CV-5728<br><br>Civil Action |

**DEFENDANTS, WILLIAM N. RUSSELL, III AND RUSSELL CAST STONE, INC'S, ANSWER TO PLAINTIFF'S COMPLAINT WITH AFFIRMATIVE DEFENSES, COUNTERCLAIM, DESIGNATION OF TRIAL COUNSEL AND JURY DEMAND**

Defendants, William N. Russell, III and Russell Cast Stone, Inc., by way of Answer to Plaintiff's Complaint hereby says:

1-3. Denied.  After reasonable investigation, Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the averments contained in this paragraph and, therefore, deny same and demand strict proof thereof at trial.

4-5. Denied.  The averments contained in this paragraph state conclusions of law to which no answer is required.  By way of further answer, however, after reasonable investigation, Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the averments contained in this paragraph and, therefore, deny same and demand strict proof thereof at trial.

6-9. Denied.  After reasonable investigation, Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the averments contained in this paragraph and, therefore, deny same and demand strict proof thereof at trial.

10. Admitted.

11. Denied. The averments contained in this paragraph state conclusions of law to which no answer is required. By way of further answer, however, after reasonable investigation, Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the averments contained in this paragraph and, therefore, deny same and demand strict proof thereof at trial.

12-13. Denied. After reasonable investigation, Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the averments contained in this paragraph and, therefore, deny same and demand strict proof thereof at trial.

14-31. Denied. The averments contained in this paragraph state conclusions of law to which no answer is required. By way of further answer, however, after reasonable investigation, Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the averments contained in this paragraph and, therefore, deny same and demand strict proof thereof at trial.

## COUNT ONE - FRAUD IN THE INDUCEMENT

Answering Defendants incorporate by reference their answers to the Paragraphs in all previous Counts above as fully as though same were set forth herein at length.

32-38. Denied. The averments contained in this paragraph state conclusions of law to which no answer is required. By way of further answer, however, after reasonable investigation, Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the averments contained in this paragraph and, therefore, deny same and demand strict proof thereof at trial.

**WHEREFORE**, Answering Defendants demand judgment in their favor and against Plaintiffs together with costs, attorney's fees, and other relief as may be just and reasonable.

## COUNT TWO - BREACH OF CONTRACT

Answering Defendants incorporate by reference their answers to the Paragraphs in all previous Counts above as fully as though same were set forth herein at length.

39-41. Denied.  The averments contained in this paragraph state conclusions of law to which no answer is required.  By way of further answer, however, after reasonable investigation, Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the averments contained in this paragraph and, therefore, deny same and demand strict proof thereof at trial.

**WHEREFORE**, Answering Defendants demand judgment in their favor and against Plaintiffs together with costs, attorney's fees, and other relief as may be just and reasonable.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

This Court lacks jurisdiction over the subject matter of Plaintiffs' Complaint.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff failed to effect sufficient service of process upon the Defendants.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the applicable Statute of Limitations and/or Laches.

## FIFTH AFFIRMATIVE DEFENSE

At all times relevant hereto, the Answering Defendants acted in a reasonable and proper manner in connection with their obligations under the subject contract.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff is estopped from enforcing more stringent representations, covenants and warranties than were in effect under the terms of the subject contract.

### SEVENTH AFFIRMATIVE DEFENSE

The claims of Plaintiff are barred by their failure to mitigate damages.

### EIGHTH AFFIRMATIVE DEFENSE

If the alleged damages of Plaintiff are true and proven, which are denied, then such damages were caused by conditions over which the Answering Defendants had no control.

### NINTH AFFIRMATIVE DEFENSE

If the alleged damages of the Plaintiff are true and proven, which are denied, then such damages were not caused by any conduct of Answering Defendants, which was secondary and passive, but were caused by the primary and active conduct of third parties over whom the defendant had no control.

### TENTH AFFIRMATIVE DEFENSE

The claims of Plaintiff are barred in whole or in part by the Single Controversy Doctrine.

### ELEVENTH AFFIRMATIVE DEFENSE

The claims of Plaintiff are barred by the doctrines of arbitration and award, estoppel, res judicata, and/or waiver.

### TWELFTH AFFIRMATIVE DEFENSE

Answering Defendants alleges that others' acts or omissions constituted the direct, intervening or superseding cause of all damages or injuries allegedly sustained.

### THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claim are barred by the doctrine of Spoliation of Evidence.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint should be dismissed for failure to join an indispensable party/parties.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint should be dismissed since Plaintiff violated a condition precedent with respect to the contract.

## SIXTEENTH AFFIRMATIVE DEFENSE

Answering Defendants did not breach any alleged contract with the Plaintiff.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Any contract that allegedly existed between the Answering Defendants and the Plaintiffs was rescinded solely due to the actions of the Plaintiffs.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Any contract that allegedly existed between the Answering Defendants and the Plaintiff was declared null and void due to impossibility of performance by Answering Defendants.

## NINETEENTH AFFIRMATIVE DEFENSE

Any contract allegedly entered into between the Answering Defendants and the Plaintiff were declared null and void due to the Plaintiffs' non-performance of their obligations in connection with the contract.

## TWENTIETH AFFIRMATIVE DEFENSE

Any contract that allegedly existed between the Answering Defendants and the Plaintiff were declared null and void since the Plaintiffs made material misrepresentations in connection with the contract.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff is estopped from enforcing any alleged contract with the Answering Defendants.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Any contract that allegedly existed between the Answering Defendants and the Plaintiff is void as a matter of law due to the Doctrines of Malfeasance and/or Misfeasance and/or Nonfeasance.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff's complaint should be dismissed since Plaintiff did not plead fraud with sufficient specificity.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff's complaint should be dismissed since Answering Defendant did not commit any fraud and/or fraudulent acts.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiff's complaint should be dismissed since Answering Defendant did fail to disclose any material information or make any material misrepresentations.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's complaint should be dismissed since Answering Defendant did not induce Plaintiff to rely on any false information to their detriment.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's complaint should be dismissed since any alleged failure to perform any contracts with the subject customers was solely the result of Plaintiff's actions and/or omissions.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

Plaintiff's complaint should be dismissed since Answering Defendant did not fail to disclose and/or conceal any information with respect to the terms of the subject contact.

## THIRTIETH AFFIRMATIVE DEFENSE

Plaintiff is barred from recovery as the applicable representations and warranties may have expired.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint should be dismissed as they hired their own accountants to conduct an extensive and thorough due diligence with respect to Defendants' assets and customer accounts.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff's Complaint should be dismissed as Plaintiffs lack privity with Defendants.

## THIRTY-THREE AFFIRMATIVE DEFENSE

The Answering Defendants hereby reserves the right to interpose such other defenses as discovery may disclose.

## COUNTERCLAIMS OF DEFENDANTS, WILLIAM N. RUSSELL, III AND RUSSELL CAST STONE, INC.

William N. Russell, III ("Russell") and Russell Cast Stone, Inc. ("Cast Stone") file this Counterclaim against Plaintiff and Counterclaim Defendant, Reading Rock Northeast, LLC, formerly known as Reading Rock Russell, LLC ("Reading Rock") and allege upon knowledge as to themselves, known acts, and upon information and belief as to all other matters:

1. The action filed by Reading Rock against Russell and Cast Stone is nothing more that an attempt by Reading Rock to avoid paying Russell and Cast Stone monies which they are entitled to under the Asset Purchase Agreement ("APA"). The claims of Reading Rock are factually and legally baseless. Indeed, it is Reading Rock who is in breach of the contract.

2. In addition, Reading Rock wrongfully terminated William N. Russell, III, violating State laws.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. §1332. The action is between citizens of different states and the amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

4. Venue is proper in this district, pursuant to 28 U.S.C.§1391 (a)(1) or (2).

5. William N. Russell, III is an individual residing at 1145 Chanticleer, Cherry Hill, New Jersey   08003.

6. Russell Cast Stone, Inc., is a New Jersey Corporation, with its principal place of business at 1145 Chanticleer, Cherry Hill, New Jersey   08003.

7. Upon information and belief, Reading Rock Northeast, LLC is a Ohio corporation.

## FACTUAL ALLEGATIONS

8. On June 29, 2018, William N. Russell, III and Russell Cast Stone, Inc., entered into an Asset Purchase Agreement ("APA") with Reading Rock Northeast (formerly known as "Reading Rock Russell, LLC").  As part of the APA, Russell and Cast Stone Inc. agreed to sell certain assets to Reading Rock and Reading Rock agreed to assume certain liabilities.  (See Asset Purchase Agreement, attached hereto as Exhibit "A").

9. In exchange for the purchase and sale of assets, Reading Rock agreed to pay Russell and Cast Stone, Two Million Dollars ($2,000,000.00), plus Fifty Percent (50%) of inventory as of the closing date that exceeded a set amount, plus Accounts Receivable. ("Purchase Price").  (See Section 4.1 of Exhibit "A").

10. Under the APA, Section 4.1 the Purchase Price was to be reduced by, among other things, "an amount equal to the sum of (*i*) the total Accounts Receivable, which are ninety (90) days or older [Old AR] and (ii) an amount equal to five percent (5%) of all Accounts

Receivable, less than ninety (90) days [New AR]." These two figures were jointly referred to as "AR Holdback". (See Section 4.1 of Exhibit "A").

11. The purchase price was also to be reduced by "the sum of One Hundred Thousand ($100,000.00) Dollars, which shall be held by Buyer for a period of One Hundred Eighty (180) days following the closing (the "Holdback") to pay any excluded liability which is asserted against the business for the transferred assets. (The "Liability Holdback"). See Section 4.1 of Exhibit "A").

12. The purchase price was further reduced by "the sum of One Hundred Thousand ($100,000.00) Dollars, to be held until both delivery of an updated Phase One, which costs of the updated Phase One shall be borne by Buyer, indicating the Real Estate ... is in full compliance with all Federal, State and Local environmental laws, and delivered to Buyer of a written determination by the New Jersey Department of Environmental Protection that the Real Estate and the transactions contemplated hereunder have satisfied all Rules under the Industrial Site Recovery Act. (See Section 4.1 of Exhibit "A").

13. Further, under Section 4.1 of the APA, it was stated: "on or before each sixty (60) day period following Closing, Buyer shall deliver prepare and deliver to Seller a statement setting forth its calculation of the amount of Accounts Receivable collected by Buyer between each sixty (60) day period and should remit that portion of the AR Holdback attributable to the Accounts Receivable, which shall be one hundred (100%) percent of any Old AR collected and five (5%) percent of any New AR collected during that period. Within thirty (30) days after the expiration of the Holdback Period, Buyer shall prepare and deliver to Seller a statement setting forth his calculation of the Excluded Liabilities paid by Buyer and shall remit to Seller the remainder of the Liability Holdback." (See Section 4.1 of Exhibit "A").

14. In addition to the Purchase Price, under Section 4.2 of the APA, Reading Rock was to pay to Russell and Cast Stone., an additional amount of up to a maximum amount of Two Million ($2,000,000.00) Dollars which was termed the "Earn Out Amount". The Earn Out amount was to be paid over the course of a five (5) year period after the closing. The Earn Out amount was to be calculated by payment to Russell and Cast Stone, an amount that exceeded earnings before interest, taxes, depreciation amortization ("EBITDA") of the business that exceeded Four Hundred Thousand ($400,000.00) for the immediately previous twelve (12) month period.   (See Section 4.2 of Exhibit "A").

15. Under the APA, the first payout of the earn out amount was due to Russell and Cast Stone, "within ninety (90) days after the first anniversary of the Closing Date, based upon the trailing twelve month operation of the Business after the closing. The additional interim Earn Out amounts shall be due ninety (90) days after each succeeding anniversary of the closing date until the earlier of ( i ) the fifth (5th) anniversary of the closing date or (ii) Sellers receipt of the Maximum Earn Out Amount has been paid in full.   (See Section 4.2 of Exhibit "A").

16. On July 16, 2018 Russell and Reading Rock entered into an Employment Agreement for a term of five (5) years. (A true and correct copy of the Employment Agreement is attached hereto and incorporated herein as Exhibit "B").

17. Pursuant to the Employment Agreement, Russell was to receive compensation that consisted of a base salary of $125,000.00 *plus* commissions that were based on sales. In addition, under Section 7 of the Employment Agreement, Russell was to receive Severance Benefits upon his separation from Reading Rock. (See Section 4(a) and 4(b), and Section 7, respectively, of Exhibit "B").

18. In July of 2017, Russell underwent back surgery on his lower back, consisting of a spinal fusion with metal rod implantation. This fact was made known to Reading Rock prior to the closing date.

19. On June 28 2018, Russell sent an email to Reading Rock's Manager, Gordon Rich notifying him of his disability issues prior to acquisition. Russell's disabilities were also discussed with Reading Rock's employee, Mark Swortwood, many times.

20. Russell, as Sales Manager, had requested to spend most of his time in the office, managing the Sales Force and making sales calls, as he had done successfully for forty-five (45) years, as an accommodation for his disability.

21. On February 6, 2019, Russell began reporting to Kevin Lawhorn, Sales Manager, who increased the demands and "face visits" requiring over forty (40) face calls per month.

22. Russell had requested several times an adjustment and accommodation due to his on-going disability. At no time did Reading Rock provide an accommodation.

23. On April 8, 2019, Russell saw a podiatrist, complaining of cold feet and leg cramping. On this date, Russell presented to Kevin Lawhorn an arterial doppler examination of his left foot, which required a vascular medical procedure to correct. Lawhorn continued to press on the job duties of Russell, irrespective of his medical condition and his disability.

24. On April 22, 2019, in spite of his known disability, Russell was terminated by Reading Rock.

25. Russell has never received any commissions under Section 4(b) of the Employment Agreement or Severance Benefits under Paragraph 7 of the Employment Agreement.

### FIRST CAUSE OF ACTION (BREACH OF CONTRACT)

26. William N. Russell, III and Russell Cast Stone, Inc. allege and incorporate by reference the allegations set forth in Paragraphs one (1) through twenty-five (25) of this counter claim as if fully set forth herein.

27. Reading Rock entered into an APA with Russell and Russell Cast Stone, Inc. for the purchase of certain assets and assumptions of liabilities and in exchange agreed to pay a Purchase Price.

28. As part of the Purchase Price, there were certain Accounts Receivables that were withheld from the Purchase Price that were to be paid at a later time.

29. At no time has Russell or Cast Stone, received any of the Accounts Receivable Holdback as set forth in the APA. Section 4.1.

30. In addition, Russell and Cast Stone has not received any of the One Hundred Thousand ( $100,000.00) Dollars that was excluded from the purchase price as the "Liability Holdback", which they were to receive within thirty (30) days after the expiration of the Holdback, which was one hundred and eighty (180) days following the closing.

31. Also, under Section 4.2, Russell and Cast Stone were to receive an Earn Out Amount, over the course of five (5) years up to a maximum of Two Million ($2,000,000.00) Dollars.  Upon information and belief, neither Russell, nor Cast Stone, have received any amounts as required under Section 4.2 of the APA

32. Reading Rock has breached their contract for failing to make the payments as required under Sections 4.1 and 4.2 of the APA.

33. Reading Rock's actions were willful and intentional.

34.     These practices have caused Russell and Russell Cast Stone, Inc. damages in excess of Three Million Two Hundred Thousand ($3,200,000.00) dollars, in addition to, but without limitation, other, serious financial and pecuniary harm, out-of-pocket expenses, loss of opportunity income and other related costs.

### SECOND CAUSE OF ACTION (BREACH OF CONTRACT)

35.     William N. Russell and. Russell Cast Stone, Inc. allege and incorporate by reference the allegations set forth in Paragraphs one (1) through thirty-four (34) of this counter claim as if fully set forth herein.

36.     Pursuant to Section 4(b) of the Employment Agreement, Russell was to receive commissions as part of his compensation.  At no time has Reading Rock paid Russell any commissions as enumerated under the Employment Agreement.  (See Section 4(b) of Exhibit "B").

37.     Pursuant to Section & of the Employment Agreement, Russell was to receive severance benefits upon separation from Reading Rock.  (See Section 7 of Exhibit "B").  At no time has Reading Rock paid Russell any of the severance benefits nor the remaining amounts due for compensation under the Employment Agreement.

38.     Reading Rock has breached their contract for failing pay Russell commissions under the Employment Agreement and for failing to pay severance benefits under the Employment Agreement.

39.     Reading Rock's actions were willful and intentional.

40.     These practices have caused Russell and Russell Cast Stone, Inc. damages in excess of One Million Two Hundred Thousand ($1,200,000.00) Dollars, in addition to, but

without limitation, other serious financial and pecuniary harm, out-of-pocket expenses, loss of opportunity income and other related costs.

### THIRD CAUSE OF ACTION (WRONGFUL TERMINATION)

41. William N. Russell and. Russell Cast Stone, Inc. allege and incorporate by reference the allegations set forth in Paragraphs one (1) through forty (40) of this counter claim as if fully set forth herein.

42. On several occasions, Russell advised and made known to Reading Rock of his physical disabilities, and requested accommodations which were available and would allow Russell to fulfill his duties and obligations under the Employment Agreement.

43. Throughout the entirety of Russell's employment with Reading Rock, Reading Rock refused to accommodate Russell's accommodations and also failed to appreciate his physical disabilities.

44. Even with his physical disabilities and arduous working conditions, Russell was able to achieve above average results.

45. Notwithstanding his physical disabilities and his request for accommodations, not only did Reading Rock fail to provide accommodations, but they terminated Russell claiming Russell failed to fulfill his employment duties. Reading Rock advised Russell that his termination was, because Russell failed to make a sufficient number of sales calls, and also because Russell failed and/or refused to visit the markets that Reading Rock instructed Russell to visit. Russell's inabilities to perform the above tasks were due to his physical disabilities , which Reading Rock was aware of prior to the APA and subsequent to the APA and the Employment Agreement. Under the New Jersey Law Against Discrimination ("NJLAD"), NJSA 10:5-1, et seq., it is unlawful for an employer to terminate an employee due to a disability.

46.   Reading Rock is in violation of the NJLAD in terminating Russell for failing to fulfill his duties when such failure, if any, was due to his physical disabilities.

47.   Accordingly, Reading Rock has violated NJLAD by knowingly, willfully and intentionally terminating Russell due to his physical disabilities.

## **PRAYER FOR RELIEF**

WHEREFORE, William N Russell, III and Russell Cast Stone, Inc., pray for judgement as follows:

(a)   Awarding William N. Russell, III and Russell Cast Stone, Inc. damages resulting from Reading Rock's breach of contract in an amount in excess of Four Million Four Hundred Thousand ($4,400,000.00) Dollars;

(b)   Awarding William N. Russell, III damages resulting from Reading Rock's wrongful termination under the New Jersey LAD in an amount to be established at Trial;

( c)   Awarding William N. Russell, III and Russell Cast Stone, Inc., punitive damages in an amount to be established at Trial;

(d)   For William N. Russell, III and Russell Cast Stone, Inc.'s costs and expenses, including attorneys' fees; and,

(e)   For each any other relief as the Court deems just and proper.

**JURY DEMAND**

Defendants, William N. Russell, III and Russell Cast Stone, Inc., demand a trial by jury on all issues.

**KENT & McBRIDE, P.C.**

BY: *Denis P. McBride*

Denis P. McBride, Esquire
John P. Shea, Esquire
**Kent & McBride, P.C.**
Attorneys for Defendants,
1040 Kings Highway North - Suite 600
Cherry Hill, NJ 08034
(856) 667-3113 -Telephone
(856) 667-4003 - Facsimile

Attorney for Defendants:
William N. Russell, III and Russell Cast Stone, Inc.

**CERTIFICATE OF SERVICE**

I, Denis P. McBride, hereby certify that a true and correct copy of Defendants, William N. Russell, III and Russell Cast Stone, Inc., foregoing pleading has been sent via electronic filing and first class mail, postage pre-paid, upon any unrepresented parties and counsel for Plaintiff, Joseph J. Pangaro, Esquire, Duane Morris, LLP, 30 South 17th Street, Philadelphia, PA 19103.

                                                                     _____
                                                                     Denis P. McBride, Esquire